UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ECOFACTOR, INC.,<br><br>    Defendant. | Case No. 21-cv-03220-HSG<br><br>**ORDER GRANTING GOOGLE'S RENEWED MOTION TO STAY**<br><br>Re: Dkt. No. 149 |

On October 18, 2023, Plaintiff and Counterclaim-Defendant Google LLC ("Google") filed a renewed motion to stay the case pending final resolution of the United States Patent and Trademark Office's *ex parte* reexamination ("XPR") of U.S. Patent No. 10,584,890 ("the '890 Patent"). Dkt. No. 149 ("Mot."). The Court finds this matter suitable for resolution without oral argument. *See* Civ. L.R. 7–1(b). For the reasons articulated below, the Court **GRANTS** Google's motion and stays the case pending final resolution of the XPR.

**I.   BACKGROUND**

Google filed this case against Defendant and Counterclaimant EcoFactor, Inc. ("EcoFactor") on April 30, 2021. Dkt. No. 1. In the Complaint, Google sought a declaratory judgment of non-infringement regarding four Asserted Patents: the '890 Patent and U.S. Patent Nos. 8,740,100 (the "'100 Patent"); 8,751,186 (the "'186 Patent"); and 9,194,597 (the "'597 Patent"). *See id.* In August 2022, the Patent Trial and Appeal Board ("PTAB") instituted i*nter partes* review ("IPR") proceedings on the '100, '186, and '597 Patents. *See* Dkt. No. 131 at 2. Google moved to stay this case, and the Court granted its motion. Dkt. No. 135. In August 2023, the PTAB issued final written decisions in all three IPR proceedings, with all claims of those patents found unpatentable. Dkt. No. 139. EcoFactor is appealing those final written decisions,

and has granted Google a unilateral covenant not to sue on the '100, '186, and '597 patents. *See* Dkt. No. 147. Thus, only the '890 Patent remains in dispute in this case. *See id.*

Google previously petitioned for IPR as to the '890 Patent, which the PTAB declined to institute on August 1, 2022. *See* Dkt. No. 150-2. Subsequently, in May 2023, Google requested XPR of all claims in the '890 Patent, which the PTAB instituted on August 17, 2023. *See* Dkt. No. 139 at 2 n.2; Dkt. No. 142 at 3. The parties agreed to a briefing schedule for this renewed motion to stay on October 3, 2023, Dkt. No. 144, and Google filed this motion on October 18, 2023. Dkt. No. 149.

## II.   LEGAL STANDARD

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination" *Ethicon, Inc. v. Quiggin*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) (internal citations omitted); *IXI Mobile (R & D) Ltd. v. Samsung Elecs. Co.*, No. 15-cv-03752-HSG, 2015 WL 7015415, at *2 (N.D. Cal. Nov. 12, 2015). Courts consider three factors in determining whether to grant a stay: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *IXI Mobile (R & D) Ltd.*, 2015 WL 7015415, at *2 (quoting *Evolutionary Intelligence, LLC v. Facebook, Inc.*, No. 13-cv-04202-SI, 2014 WL 261837, at *1 (N.D. Cal. Jan. 23, 2014)). The moving party bears the burden of demonstrating that a stay is appropriate. *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 14-cv-05330-HSG, 2015 WL 1967878, at *2 (N.D. Cal. May 1, 2015).

Courts in this district have often recognized "a liberal policy in favor of granting motions to stay" pending IPR. *See Pragmatus AV, LLC v. Facebook, Inc.*, No. 11–cv–02168–EJD, 2011 WL 4802958, at *2 (N.D. Cal. Oct. 11, 2011); *IXI Mobile (R & D) Ltd.*, 2015 WL 7015415, at *2. Courts, however, must evaluate stay requests on a case-by-case basis. *See GoPro, Inc. v. C&A Marketing, Inc.*, No. 16-cv-03590-JST, 2017 WL 2591268, at *2 (N.D. Cal. June 15, 2017). Ultimately, whether to issue a stay is a matter of the Court's discretion.

### III. DISCUSSION

#### A. Factor 1: Stage of Proceedings

"The first factor the Court considers is whether the litigation is at an early stage." *Cooler Master Co. v. Asetek Danmark A/S*, No. 21-cv-04627-HSG, 2022 WL 2673089, at *2 (N.D. Cal. June 14, 2022) (citing *AT&T Intellectual Property I v. Tivo, Inc.*, 774 F. Supp. 2d 1049, 1052 (N.D. Cal. 2011)). Specifically, courts consider "whether discovery is complete and whether a trial date has been set." *Evolutionary Intelligence*, 2014 WL 261837, at *1.

The parties dispute whether this case is at an early stage. Google argues that it is, because no discovery has taken place and no trial date has been set. *See* Mot. at 5–6. EcoFactor counters that the case is at an advanced stage because the parties and the Court have expended substantial resources in briefing and holding a hearing on claim construction issues. *See* Dkt. No. 150 ("Opp.") at 4. EcoFactor further asserts that there is little work remaining for the parties and Court to do in this case, given the "limited nature of fact discovery required for the '890 Patent". *Id*.

Considering the parties' arguments, the Court concludes this factor weighs in favor of a stay. The Court previously found that the case was at an early stage when it granted Google's original motion to stay in October 2022, and the circumstances have not meaningfully changed since that order. *See* Dkt. No. 135 at 3 (finding first factor weighed in favor of stay where "parties have engaged in virtually no discovery" and the Court had not yet issued a claim construction order or set a trial date). EcoFactor argues that there is limited discovery to complete because much of the fact discovery relevant to the '890 Patent has been done in a related case in Texas – *EcoFactor, Inc. v. Google LLC*, Case No. 6:20-cv-00075 (W.D. Tex.) (the "Texas Action"). However, the relevant consideration here is the extent to which discovery has been completed *in this case*, and the Court does not find the status of discovery in another proceeding relevant, especially where, as Google points out, there are different Accused Instrumentalities at issue in this case and there is no discovery cross-use agreement. *See* Dkt. No. 151 ("Reply") at 4–5 n.2. Accordingly, the Court finds the first factor weighs in favor of a stay.

### B. Factor 2: Simplification of Case

The second factor that the Court considers is whether granting a stay could simplify the litigation. "A stay is favored under the second factor when the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue." *Contour IP Holding, LLC v. GoPro, Inc.*, No. 17-cv-04738-WHO, 2018 WL 6574188, at *3 (N.D. Cal. Dec. 12, 2018) (internal cites omitted). Thus, granting a stay is "particularly" likely to simplify the case "when a party has obtained PTO review of each of the asserted claims in the patents-in-suit." *Evolutionary Intelligence*, 2014 WL 261837, at *2. Here, a decision in Google's favor on its XPR would "eliminate the need to try the infringement issue." *Id.*

EcoFactor does not meaningfully dispute that a decision invalidating the '890 Patent claims in the XPR would eliminate all remaining claims in dispute in this case. It instead argues that "the outcomes of previous invalidity challenges against the '890 Patent may be predictive of Google's XPR." Opp. at 8. EcoFactor relies on four prior challenges to the '890 Patent as "predictive" of the success of Google's XPR: (1) Google's prior IPR petition, (2) another IPR petition challenging the '890 Patent brought by Ademco, Inc. (the "Ademco IPR"), (3) Google's motion to dismiss under 35 U.S.C. § 101, and (4) the conclusion of *EcoFactor, Inc. v. ecobee, Inc.*, Case No. 6:21-cv-428-ADA (W.D. Tex.) (the "*ecobee* Case"). The Court finds EcoFactor's arguments unpersuasive. Of the four prior challenges identified by EcoFactor, only one has any overlap with Google's current XPR – the Ademco IPR.[1] However, only three (Trundle, Ehlers, and Wedekind) of the six prior art references in Google's XPR overlap with those in the Ademco IPR, and the PTAB declined to institute the Ademco IPR but did institute Google's XPR. Moreover, in declining to institute the Ademco IPR, the PTAB appears to have relied primarily on

---

[1] Google's prior IPR is irrelevant because the PTAB declined to institute Google's prior IPR on grounds relating to the priority date of the '890 Patent, and not the substance of the prior art references (which are different from those asserted by Google in its XPR). Google's motion to dismiss is likewise irrelevant because patent eligibility under Section 101 has no predictive value as to invalidity challenges under Section 102 and 103. And the *ecoBee* Case is irrelevant as the defendant there elected not to present an invalidity case. *See EcoFactor, Inc. v. ecobee, Inc.*, 6:21-cv-00426-ADA, Dkt. No. 261 (EcoFactor's Memorandum in Support of Its Bill of Costs) at 5 n.1 (W.D. Tex. Sept. 6, 2023).

deficiencies in prior art not asserted in the Google XPR, or the lack of motivation to combine, and *not* deficiencies in Trundle, Ehlers, and Wedekind. *See e.g.*, Dkt. No. 150-2 at 11–17 (rejecting ground on failure of petition to "assert that a person of ordinary skill in the art would have modified Leen in view of Trundle by configuring Leen's HVAC controller"); 17–19 (finding deficiencies in petition's reliance on Imes prior art reference). Thus, even if the Court considered the Ademco IPR relevant in predicting the success of Google's XPR, the Court finds no reason to ascribe much predictive value to the overlap of Trundle, Ehlers, and Wedekind between the Ademco IPR and Google's XPR. Ultimately, the Court's concern in considering this stay request is not whether the XPR *will* result in invalidation, but rather whether it realistically *could*.

Having found that EcoFactor's arguments regarding the merits of Google's XPR are not determinative, the Court concludes that "this case squarely presents the usual situation in which the results of any instituted [XPRs] obviously could simplify the case," and the second factor thus weighs in favor of a stay. *Apple, Inc. v. AliveCor, Inc.*, No. 4:22-cv-07608-HSG, Dkt. No. 89 at 4 (N.D. Cal. Dec. 29, 2023).

### C. Factor 3: Prejudice and Disadvantage

The third factor for the Court to consider is whether Defendants will be unduly prejudiced by a stay. "With respect to the third factor, this district applies a four sub-factor analysis considering: (i) the timing of the reexamination request; (ii) the timing of the request for stay; (iii) the status of reexamination proceedings; and (iv) the relationship of the parties. Courts have repeatedly found no undue prejudice unless the patentee makes a specific showing of prejudice beyond the delay necessarily inherent in any stay." *Evolutionary Intelligence*, 2014 WL 261837, at *2 (citation and quotation marks omitted).

#### i. Timing of the Reexamination Request

EcoFactor argues that this subfactor weighs against a stay because Google delayed filing its XPR petition until May 2023, nine months after the PTAB originally denied institution of its IPR petition and seven months after the PTAB denied Google's request for rehearing. This delay, according to EcoFactor, represents "evidence of dilatory motives or tactics, which suggest that [Google] is 'taking tactical advantage of opportunities for delay.'" *Facebook, Inc. v. Blackberry*

5

*Ltd.*, No. 4:18-cv-05434-JSW, Dkt. No. 125 at 2 (N.D. Cal. June 15, 2020) (citing *Teleman Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006)).

Here, the Court finds that this subfactor weighs somewhat against a stay. EcoFactor argues that Google delayed its XPR petition to gain insight into EcoFactor's response to the Ademco IPR, and to ensure that the PTAB's institution decision on the XPR would coincide with the issuance of final written decisions in its IPRs, effectively prolonging its stay of this litigation. *See* Opp. at 17–19. In reply, Google says little to rebut this argument, simply asserting that it "sought reexamination almost half a year ago while this case was still stayed and promptly after searching for and identifying additional prior art in support of its nearly 160-page long XPR request." Reply at 11. While the Court recognizes that an XPR petition cannot be put together overnight, Google has not explained in any detail why its seven-month delay in filing its petition for XPR was reasonable, or why it could not have done so earlier. Absent such an explanation, and given that the timing resulted in the PTAB not being presented with the issue until (1) after Google had the chance to consider EcoFactor's response to Ademco's IPR petition and (2) closer to the time that this Court's stay based on the IPRs otherwise likely would have been due to expire, this factor weighs somewhat in EcoFactor's favor.

####    ii.    Timing of the Request for Stay

The PTAB instituted Google's XPR on August 17, 2023, and the parties agreed to a briefing schedule for this motion shortly thereafter, on October 3, 2023. As such, there is no evidence that Google delayed in bringing this motion, and this subfactor correspondingly weighs in favor of a stay.

####    iii.    Status of Reexamination Proceedings

Where a review has been instituted already, this subfactor weighs in favor of a stay. *See Zomm, LLC v. Apple Inc.*, 391 F. Supp. 3d 946, 957 (N.D. Cal. 2019). Here, Google's XPR has been instituted, weighing in favor of a stay.

####    iv.    Relationship of the Parties

The Court previously found this subfactor neutral, considering the parties' dueling characterizations as to whether they are direct competitors, and EcoFactor's failure to pursue a

6

preliminary injunction. *See* Dkt. No. 135 at 5. Because the relationship between the parties has not changed since that order, the Court finds this subfactor is still neutral.

### v. Risk of Evidence Loss

EcoFactor urges that, in addition to the factors discussed above, the Court should also consider the risk of loss of evidence over time that would result from a further stay in this case. *See* Opp. at 22. EcoFactor argues that such risks would put it, as the plaintiff in this case, at a tactical disadvantage from lost evidence or fading witness recollections. *Id.*

The risk of evidence loss "is inherent in any stay and is a factor that the Court must consider." *LG Elecs., Inc. v. Eastman Kodak Co.*, No. 09-cv-0344H (BLM), 2009 WL 1468703, at *2 (S.D. Cal. May 26, 2009). "This risk is greater when important documents are under the control of third parties, as these entities might not be obligated to preserve that evidence." *Id.* However, absent "any specific reason to worry about document preservation issues," there is "no risk of undue prejudice" that would militate against a stay. *IXI Mobile (R & D) Ltd.*, 2015 WL 7015415, at *4. Here, the Court finds no specific reason to worry about document preservation issues: EcoFactor itself has argued, as to the first factor, that there is limited discovery left to be done in this case and that much of the relevant discovery has been conducted in the Texas Action. Moreover, unlike in *LG Elecs.*, EcoFactor has not shown that important evidence here is under the control of third parties, such that document preservation would be of particular concern. Obviously, all parties in this ongoing litigation have an obligation to preserve potential evidence. Absent any such specific reason to worry about evidence preservation issues, the Court finds no risk of undue prejudice to EcoFactor that weighs against a stay.

Because the Court finds the timing of Google's XPR request weighs somewhat against a stay, and the other subfactors are either neutral or weigh in favor of a stay, it concludes that the third factor – prejudice and disadvantage – is neutral.

## IV. CONCLUSION

The Court finds that the first two factors – status of the proceedings and simplification of the case – weigh heavily in favor of a stay while the last factor – prejudice and disadvantage – is neutral. Considering all three together, the Court concludes that a stay is warranted, and therefore

7

**GRANTS** Google's motion to stay pending conclusion of its XPR of the '890 Patent. The parties shall file a joint status report every six months from the date of this order to update the Court on the status of the XPR proceeding and any appeals therefrom. Within seven days of the issuance of the final written decision in Google's XPR, the parties shall file a joint status report of no more than one page, without any argument, simply notifying the Court of the decision and attaching a copy.

**IT IS SO ORDERED.**

Dated: 1/8/2024

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge